**LAWS v. NEW YORK LIFE INS. CO. et al.**
**NEW YORK LIFE INS. CO. v. LAWS et al.**
No. 7932.

Circuit Court of Appeals, Fifth Circuit.
Feb. 19, 1936.

842

L. S. Gaulden, of West Palm Beach, Fla., for appellant Pearl Gaulden Laws.

J. L. Doggett and Charles Cook Howell, both of Jacksonville, Fla., for appellees and cross-appellant.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

In March, 1928, New York Life Insurance Company, an appellee, herein referred to as the Insurer, issued its policy of insurance in the sum of $10,000 on the life of William Laws, Jr., the beneficiary named in the policy being Mary A. Laws, the wife of the insured at the time the policy was issued. The policy contained the following provisions:

"Assignment.—Any assignment of this Policy must be made in duplicate and one copy filed with the Company at its Home Office. The Company assumes no responsibility for the validity of any assignment."

"Change of Beneficiary.—The Insured may from time to time change the bene-

ficiary, unless otherwise provided by indorsement on this Policy or unless there be an existing assignment of this Policy. Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by the Policy for indorsement of the change thereon by the Company, and unless so indorsed the change shall not take effect. After such indorsement the change will relate back to and take effect as of the date the Insured signed said written notice of change whether the Insured be living at the time of such indorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office. In the event of the death of any beneficiary before the Insured the interest of such beneficiary shall vest in the Insured, unless otherwise provided herein."

In November, 1929, the Insured and the State Bank & Trust Company of New Smyrna, Florida (herein referred to as the Bank), entered into a so-called "Trust Agreement," dated October 28, 1929, which called the Bank party of the second part, and, after reciting that the Insured had made the party of the second part the beneficiary under said policy, provided that, in the event of the death of the Insured, the party of the second part "shall collect the insurance due under said policy aforesaid" and "pay all just debts and liabilities owing by the said party of the first part insofar as the amount of insurance collected will apply and if there be any balance or remainder thereof of said insurance money so collected by the said beneficiary, then pay it over to the estate or legal representatives, heirs, executors or administrators of the said party of the first part." Pursuant to an above set out provision of the policy, the beneficiary under it was changed, an indorsement on the policy showing that the new beneficiary was: "State Bank and Trust Company of New Smyrna, Fla., as trustee, in accordance with the terms of a trust agreement dated the 28th day of Oct., 1929." When the Insured made application for that change of beneficiary, he delivered to the Insurer a copy of said trust agreement. When the trust agreement was executed the Insured was indebted to the Bank. The trust agreement was made to secure that debt. Upon the Insured's paying that debt, the Bank delivered the policy to the Insured, but failed to destroy or return to Insured the trust agreement, which was in

the possession of the Bank when it subsequently failed. In January, 1931, another change of beneficiary was made in the manner provided in the policy, the new beneficiary being the appellant, who was the wife of the Insured when she became the beneficiary under the policy. Upon the death of the Insured attorneys for certain alleged creditors of the Insured notified the Insurer that such creditors claimed the proceeds of the policy as beneficiaries under the Trust Agreement. After receiving such notice and proof of death, the Insurer sent its check for the amount due under the policy, the check being made payable to appellant and the Bank. The former officials of the Bank, upon being requested to indorse that check, refused to do so, by reason of lack of power, the trust power of the Bank having terminated. Thereafter appellant filed a suit in a Florida state court, praying that the powers granted the Bank by the trust agreement be decreed to have been performed and the trust fully executed, and that the trust agreement be canceled. The alleged creditors in whose behalf the above-mentioned notice to the Insurer was given intervened in that suit. Upon learning of that state court suit, the Insurer sought leave to intervene therein, setting up what had occurred as to alleged creditors of the Insured asserting claims to the insurance money, and what the Insurer had done as above stated. Soon after that application was made appellant brought suit on the policy. No order on that application was made in the state court suit, which is still pending. In the suit brought by the appellant on the policy the Insurer filed a so-called equitable plea which set up facts above stated, renewed the tender of the amount due on the policy, alleged the absence of collusion and that appellant was merely a stakeholder, and prayed leave to pay into court the amount due on the policy (that amount being the amount of the policy, less the amount of a loan to the Insured thereon, with interest on the balance from the date when the Insurer received proof of Insured's death to the date of the institution of appellant's suit on the policy), that the cause be transferred to the equity side and proceed as a suit in equity, that the alleged creditors of the Insured be made parties, that appellant and said alleged creditors be required to interplead, and that Insurer be discharged and be allowed costs and attorney's fees. After the court had overruled appellant's

motion to strike parts of said equitable plea, the alleged creditors of the Insured were made parties defendant to said equitable plea, appellant was required to answer that equitable plea, and the suit proceeded as one in equity. It appearing from the pleadings that there was no dispute as to material facts, the court rendered a final decree on the pleadings, adjudging that the claims asserted by alleged creditors of the Insured be disallowed; that appellant be awarded the amount due on the policy at the time appellant's suit was brought, and costs of suit, and that her claims to attorney's fees and to interest since the institution of her suit be denied; and that Insurer's motion for a judgment of interpleader be denied. The appellant complains of the disallowance of her claims to attorney's fees and to interest since the institution of her suit on the policy. The Insurer by cross-appeal complains of the denial of its motion for a judgment of interpleader, with the resulting rejection of its claim for attorney's fees.

The equitable plea was in the nature of a bill of interpleader, in that it showed that there were adverse claimants to insurance money which the Insurer admitted to be due under the policy sued on by the appellant, and offered to pay into court. It showed an equity in the Insurer to be protected against a double liability by having the court to pass on the claims of the rival claimants to the fund which the Insurer offered to pay into court, though the allegations of that plea did not disclose a case for a bill of interpleader strictly so called, by reason of the fact that the claims to the insurance money asserted by the Insured's alleged creditors were not based on the policy, as was appellant's claim to that fund, but on the transaction between the Insured and the Bank evidenced by the trust agreement, and the equitable plea sought a determination of the effect of the trust agreement transaction on the Insurer's rights or duties with reference to the amount due under the policy. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L. Ed. 1206, 91 A.L.R. 950; Groves v. Sentell, 153 U.S. 465, 14 S.Ct. 898, 38 L.Ed. 785; Hayward & Clark v. McDonald (C.C.A.) 192 F. 890; 15 R.C.L. 233, 234.

The amount the Insurer admitted to be due under the policy was not paid into court. The Insurer continued to have the use of that fund during the pendency of

the suit to the date of the rendition of the decree appealed from. So far as appears, while the suit was pending, prior to the submission for final decree, the Insurer did not specifically call to the attention of the court the part of the equitable plea which prayed leave to pay into court the amount due under the policy, and ask the court to make an order granting such leave. In the circumstances stated we think there is no good reason for relieving the Insurer from the payment of interest on the amount admitted to be due for the time elapsing between the date of the institution of the suit and the date of the rendition of the decree appealed from. Spring v. South Carolina Insurance Co., 8 Wheat. 268, 5 L.Ed. 614. The court erred in disallowing interest for that period.

A Florida statute provides for the allowance of a reasonable attorney's fee in favor of the beneficiary of an insurance policy who recovers judgment thereon. Comp.Gen.Laws Fla.1927, § 6220. That statute has been construed as providing for a penalty against delinquent insurance companies. United States Fire Ins. Co. v. Dickerson, 82 Fla. 442, 453, 90 So. 613; State ex rel. Royal Ins. Co. v. Barrs, 87 Fla. 168, 172, 99 So. 668. Florida decisions are consistent with the conclusion that such a provision for a penalty is not applicable where there are rival claimants to the insurance money and the postponement of payment does not go beyond what is required to enable the insurer to be protected from asserted double liability. Atlantic Coast Line R. R. Co. v. Farris & Co., 111 Fla. 412, 149 So. 561; Atlantic Coast Line R. R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 So. 593. Under a reasonable construction of the statute, it does not require the allowance of attorney's fees to the beneficiary where the insurer's postponement of payment is in good faith for the purposes of having determined which of rival claimants to the insurance money is entitled to it, and being protected from harassment and possibly from a double payment of the sum it admits to be due. Southwestern Ins. Co. v. Woods Nat. Bank (Tex.Civ.App.) 107 S.W. 114; New York Life Ins. Co. v. Veith (Tex.Civ.App.) 192 S.W. 605. In the circumstances of the instant case the allowance of attorney's fees to appellant would amount to penalizing the Insurer for offering to pay the insurance money into court, instead of paying it to the appellant, at a time when alleged creditors of the Insured were asserting claims to that money based on a transaction to which the Insured was a party, and with reference to which the appellant and alleged creditors of the Insured were engaged in litigation in a state court. The incurring by appellant of liability for attorney's fees fairly may be regarded as having been due, not to any fault or misconduct of the Insurer, but to the existence of a situation in which the Insurer could not reasonably or equitably be expected to pay the insurance money to the appellant before seeking court protection from being harassed by conflicting claims to that fund and possibly being subjected to double payment of the amount it admitted to be due under the policy. It well may be considered that attorney's fees should be attributed to the assertion by alleged creditors of the Insured of claims to the insurance money based upon a transaction of the Insured in which the Insurer was not interested and with reference to which it was no way in fault. The services of an attorney were not required to coerce payment of the amount due under the policy. It appears that from the time the insurance money became due the Insurer was able, ready, and willing to pay it as soon as it could ascertain who was entitled to it. It seems that to hold the Insurer liable for the attorney's fees incurred by the appellant would not be consistent with fair treatment of the Insurer in a situation brought about without its fault, and would amount to penalizing the Insurer for seeking a determination by the court of conflicting claims to the insurance money which the Insurer admitted to be due from it and offered to pay into court. In the circumstances disclosed we think that the court was not in error in refusing to award attorney's fees in favor of the appellant against the Insurer.

Part of the relief sought by the equitable plea was an adjudication with reference to claims asserted against the Insurer by alleged creditors of the Insured which were based, not on the terms of the policy sued on, but on a transaction of the Insured separate and distinct from that policy. That transaction occurred at a time when the Bank was the beneficiary under the policy. No assignment of the policy to the Bank was made. That transaction did not impair the unrestricted right of the Insured under the policy to change the bene-

ficiary. When the equitable plea was filed the Insurer was not in the position of a mere stakeholder, as it had an interest in the question whether, after the appellant became the beneficiary under the policy, the Insurer was or was not, by reason of the Insured's transaction with the Bank, evidenced by the trust agreement, executed while the Bank was the beneficiary under the policy, subject to any duty or liability to alleged creditors of the Insured, in addition to its liability to the person who was the beneficiary under the policy at the time of the Insured's death. The Insurer had an interest in the litigation which resulted from the filing of the equitable plea. The existence of that interest prevented the Insurer from being allowed its attorney's fees from the fund which it offered to bring into court. Groves v. Sentell, supra, 153 U.S. 465, 485, 486, 14 S.Ct. 898, 38 L. Ed. 785. The court properly disallowed the Insurer's claim to attorney's fees.

The decree is ordered to be modified by allowing interest on the amount due under the policy at the date of the Insurer's receipt of proof of death from that date to the date of the rendition of the decree under review. That decree, as so to be modified, is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

Modified and affirmed.