**COMMERCIAL NATIONAL BANK OF CHICAGO, Plaintiff–Appellee,**

v.

**William DEMOS, Mary Demos, Gus Demos, et al., Defendants–Counter Defendants–Appellants,**

and

**United States of America, and Jeffrey Strange, Defendants–Counter Plaintiffs–Appellees.**

No. 92–3839.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1993.

Decided March 10, 1994.

Teresa McLaughlin, John A. Nolet (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Joel C. Solomon, Grossman, Solomon & Feilkow, Lincolnwood, IL, for Commercial Nat. Bank of Chicago.

James C. Reho (argued), Chicago, IL, for William Demos and Mary Demos.

George B. Collins, Gregory A. Bedell, Collins & Bargione, James C. Reho Chicago, IL, for Gus Demos, Jimmy Demos and Harry Demos.

Barry R. Elden, Asst. U.S. Atty., Chicago, IL, Gary R. Allen, Teresa McLaughlin, Randolph L. Hutter, John A. Nolet, Dept. of Justice, Tax Div., Appellate Section, David S. Newman, Dept. of Justice, Tax Div., Washington, DC, for U.S.

Teresa McLaughlin, John A. Nolet, Washington, DC, Michael S. Hyman (argued), Jeffrey Strange, Strange & Associates, Wilmette, IL, for Jeffrey Strange.

Before BAUER, EASTERBROOK, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

The Commercial National Bank of Chicago brought this interpleader action to determine the rights of several claimants to $67,847.13 on deposit in certain accounts at the bank. The district court conducted a trial and awarded the money in the accounts to certain of the defendants. Because we find that the district court lacked subject matter jurisdiction, we reverse the district court's decision and remand the case with instructions to dismiss the action.

## I.  Facts

The names on these accounts are, in varying combinations, William and Mary Demos and their children. William and Mary Demos had disagreed with the Internal Revenue Service as to the nature and amount of their federal tax liability; this disagreement resulted in litigation in the United States Tax Court and the subsequent filing by the Service of a notice of levy on the accounts in the amount of $79,395.41.[1]  In addition, the Demoses failed to pay their attorney, Jeffrey Strange, for his representation in the tax litigation and related matters. As a result, Strange had served on the bank a notice of attorney's lien on the accounts for the unpaid legal bills in the amount of $38,649.50. Confronted with these liens and the contention by William and Mary Demos that the accounts actually belonged to their children, the bank initiated this action.

---

1. This amount does not reflect the actual amount owed by the Demoses. During the course of this litigation, the government agreed that the actual figure is $62,273.05.

The bank alleged no claim to the money in the accounts. Further, it alleged that it was unable to determine, without hazard to itself, which of the defendants was entitled to the funds and had no means, other than this interpleader action, to protect itself against the threat of multiple liability from the defendants' claims. The bank sought a judgment from the district court pursuant to Rule 22 of the Federal Rules of Civil Procedure so that it could insulate itself from personal liability in distributing the funds in the accounts. The government and Strange then filed cross-claims against the members of the Demos family for the amounts each party claimed it was owed. In addition, the government and Strange entered into an agreement that determined the priorities of their competing claims; they agreed that if both parties prevailed with respect to their cross-claims, Strange would be entitled to the first $15,000 from the accounts, then the government would be entitled to the full amount owed it, and Strange would be entitled to the rest of the funds in the accounts up to the full amount he was owed.

The district court conducted a trial and, on the merits, found for the government and Strange and against the Demos family. The Demoses appealed the district court's decision. At oral argument, this court asked several questions regarding the district court's jurisdiction over the action for which we did not receive satisfactory responses. We then ordered the parties to brief the issue so that we could determine whether the district court had subject matter jurisdiction to hear this case. We determine that it did not.

## II. Analysis

The bank, in its complaint, claimed jurisdiction pursuant to Rule 22 and 28 U.S.C.

§§ 1331, 2410.[2] It did not elaborate on the federal question presented by the complaint. The district court also stated that it had jurisdiction pursuant to 28 U.S.C. § 1331, by way of 28 U.S.C. § 2410, again without elaborating on the exact nature of the federal question. It determined that it had jurisdiction over the government's cross-claim pursuant to 26 U.S.C. §§ 7402(a), 7403[3] and 28 U.S.C. §§ 1340, 1345.[4] The issue of jurisdiction over this action was never raised by any of the parties, either in this court or in the court below. Further, the district court did not consider the issue in depth. Apparently, little thought was given to the issue until we demonstrated our concern about the issue at oral argument.

■ That the parties have not contested, nor the district court considered jurisdiction does not impede our inquiry. "We are required to satisfy ourselves not only of our own jurisdiction, but also the jurisdiction of the district court." *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir.1993) (citing *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Krueger v. Cartwright*, 996 F.2d 928 (7th Cir.1993)). Further, we must consider the issue *sua sponte* when it appears from the record that jurisdiction is lacking. *Id.*

■ Rule 22(1) states that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." This permits the bank, the stakeholder who has no claim to the money in the accounts and is willing to release it to the rightful claimant, "to put the money ... in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Commercial Union*

---

**2.** Section 1331 of Title 28 confers jurisdiction on the federal courts of "all civil actions arising under the Constitution, laws, or treaties of the United States." The effect of 28 U.S.C. § 2410 is to waive the United States' sovereign immunity with respect to interpleader actions in which the United States' claim is based on a tax lien.

**3.** These sections empower the United States to pursue a civil action to enforce a tax lien and

confer jurisdiction on the district courts over these civil actions.

**4.** Section 1340 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue...." Section 1345 confers jurisdiction on the district courts over any civil action in which the United States is a plaintiff.

*Ins. Co. v. United States,* 999 F.2d 581, 583 (D.C.Cir.1993) (citations omitted). Rule 22(1) provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts. *General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 705 (7th Cir.1991) (citing *Gelfgren v. Republic Nat'l Life Ins. Co.,* 680 F.2d 79, 81 (9th Cir.1982)). Where diversity is lacking in Rule 22(1) interpleader actions, jurisdiction must arise from a federal statute.[5] *Id.* Therefore, for the federal courts to have jurisdiction over this action, the bank must demonstrate the existence of a federal question. *See id.*

■ In determining federal question jurisdiction, we adhere to the "well-pleaded complaint" doctrine. Under this doctrine, federal law must create the cause of action, or some substantial, disputed question of federal law must be an element in the plaintiff's claim. *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.,* 984 F.2d 821, 822 (7th Cir.1993) (citing *Franchise Tax Bd. v. California Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983)). The consequence of this rule is that the plaintiff must state the federal question in his own claim and cannot rely on the anticipation of defenses on which it believes the defendant will rely. *Franchise Tax Board,* 463 U.S. at 9–10, 103 S.Ct. at 2846–47 (citing *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914)). The bank has alleged nothing in its complaint that, on its face, indicates the existence of a federal question. (We suppose it is the complaint's reference to the tax lien filed by the Internal Revenue Service that leads the bank to believe there is jurisdiction here.) The absence of a federal question on the bank's complaint might indicate that our inquiry is at end, considering our firm adherence to the "well-pleaded complaint" doctrine. We cannot be so quick to conclude that jurisdiction is absent, however, because the interpleader action is an unusual procedural animal.

■ In *Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. at 2846, the Supreme Court noted that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Thus, the Court held that jurisdiction is proper in "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial federal question." *Id.* at 27–28, 103 S.Ct. at 2856. Subsequently, many courts, noting the similar procedural posture maintained by both interpleader and declaratory judgment actions, have construed the principles of *Franchise Tax Board* to mean that federal courts may exercise jurisdiction over interpleader actions that do not state a federal question on the face of a well-pleaded complaint, provided that the stakeholder's right to relief necessarily depends on the resolution of a substantial question of federal law. *See General Ry. Signal Co. v. Corcoran,* 921 F.2d 700 (7th Cir.1991) (finding federal question jurisdiction); *Commercial Union Ins. Co. v. United States,* 999 F.2d 581 (D.C.Cir.1993) (finding federal question jurisdiction); *Morongo Band of Mission Indians v. California State Bd.,* 858 F.2d 1376 (9th Cir.1988) (finding no federal question jurisdiction), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989); *Bell & Beckwith v. United States,* 766 F.2d 910 (6th Cir.1985) (finding no federal question jurisdiction). We follow *Corcoran* and the lead of those other circuits and hold that jurisdiction over this action may be proper despite the absence of a federal question on the bank's well-pleaded complaint. In order to do so, however, we must now determine whether the resolution of a substantial question of federal law will provide the bank the relief it seeks.

■ As we have previously noted, the bank's complaint does not present a federal question. Therefore, it must be an issue

5. No party argues that there is even minimal diversity between the parties in this case. *See* 28 U.S.C. § 1335.

presented by the cross-claims that would raise a substantial federal question. The government cross-claimed against the Demoses to foreclose a federal tax lien relating to taxes, penalties and interest owed by William and Mary Demos, and Strange cross-claimed against the Demoses for the foreclosure of an attorney's lien. We hold that these cross-claims do not present such a substantial federal question, and jurisdiction, therefore, is lacking.

■ With respect to Strange's cross-claim, validity of attorneys' liens is solely a matter of state law. In Illinois, attorneys' liens are addressed by 770 ILCS § 5/1. There is not even a remotely federal component to this issue.[6] Further, if Strange were to bring a coercive action against the Demoses, he would have no grounds on which to base jurisdiction in the federal courts; he would have to pursue his claim in the state courts of Illinois. Therefore, Strange's cross-claim cannot serve to present a federal question on which jurisdiction can be found.

■ At first blush, the government's tax lien presents a more compelling case for the existence of a federal question. But here, too, we find that this cross-claim fails to raise a federal question. The Demoses did not contest the validity of the tax lien in the district court, nor could they; the Demoses litigated the validity and amount of their tax liability in the United States Tax Court and, in their settlement of that litigation, agreed to the validity and amount of the government's lien. The only issue between the

Demoses and the government is the ownership of the accounts.

■ As with all similar issues in the substantive realm of taxation, it is axiomatic that "the nature and extent of the taxpayer's property interest is a matter of state law." *Chicago Mercantile Exch. v. United States,* 840 F.2d 1352, 1355 (7th Cir.1988) (citing *United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *United States v. Rogers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958)). Here, a ruling on the ownership of the accounts pursuant to applicable Illinois law would dispose of the government's cross-claim.[7] Therefore, the resolution of the government's cross-claim against the Demoses does not involve a substantial question of federal law.

■ It is important to note here that the determination of the existence of a federal question does not rest on whether the federal courts would have jurisdiction over a coercive action brought by a defendant. The dispositive issue is whether such a coercive action would itself present a substantial question of federal law. A brief recap of *Franchise Tax Board* illustrates this point nicely.

In that case, a state tax authority sought a declaratory judgment as to its rights pursuant to a state tax on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan. *Id.* at 4–5, 103 S.Ct. at 2843–44. The state brought the suit in state court pursuant to California's declaratory judgment act, and the defendants removed it

---

**6.** A question of the priority of Strange's lien as against the government's lien might otherwise raise a federal question because the priorities of tax liens are governed by the federal statutory scheme. *See Aquilino v. United States,* 363 U.S. 509, 514, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); 26 U.S.C. § 6323 (1992). In this case, however, the government and Strange have reached a settlement as to the priorities of their competing liens, and, therefore, the priority of Strange's lien is not an issue that constitutes a federal question.

**7.** We pause to note that the facts in this case present us with a weaker case for federal question jurisdiction than if the validity of the government's tax lien was at issue, as was the case in *Bell & Beckwith v. United States,* 766 F.2d 910

(6th Cir.1985). *Bell & Beckwith* was a case similar to this one; it involved an interpleader action by a stakeholder in possession of funds against multiple claimants, including the government who held a tax lien. *Id.* at 911. There, both the validity of the lien and the ownership of the funds were at issue. *Id.* at 915. The Sixth Circuit held that because the resolution of the state law issue regarding ownership of the funds *might* obviate the need for resolution of any federal issue, the case did not present a federal question. *Id.* at 916. We need not go so far; in the instant case, the validity of the government's lien is not an issue. This case, therefore, presents no issues requiring the resolution of a substantial question of federal law.

to federal court. *Franchise Tax Board,* 463 U.S. at 4–7, 103 S.Ct. at 2843–45. As an initial matter, the Court extended the rule of *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) to that case. *Franchise Tax Board,* 463 U.S. at 18, 103 S.Ct. at 2850–51. The Court stated that *"Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.' " *Id.* at 16, 103 S.Ct. at 2850. Thus, the Court framed the issue as whether a federal question existed if the state tax authority brought the action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

The vacation benefit plan argued that ERISA preempted the state tax. *Id.* at 6, 103 S.Ct. at 2844–45. The Court held that even though a construction of ERISA would be required to resolve the state tax authority's claim, the declaratory judgment suit by the state did not "arise under" federal law because the underlying cause of action was grounded on the state law. *Id.* at 20, 103 S.Ct. at 2851–52. The Court based its decision, in part, on the provisions in ERISA that dictate which parties may bring an action in federal court. *Id.* at 27, 103 S.Ct. at 2855–56. The statute named only participants, beneficiaries, and fiduciaries as parties who may bring suit pursuant to ERISA. 29 U.S.C. § 1132(a)(3)(B). The Court noted that while ERISA specifically granted the defendants a cause of action exclusively governed by federal law over which the federal courts had jurisdiction, the state tax authority was not permitted to bring an action in federal court, even though the resolution of its state law claims depended entirely upon a construction of ERISA. *Id.* at 27–28, 103 S.Ct. at 2855–56.

■ In the instant case, the government clearly could bring a suit to enforce its lien in the district court, which would have jurisdiction to hear it. 26 U.S.C. §§ 7402, 7403. Because the government could bring such a suit, however, does not mean that the bank may also do so. Recall the words of the Supreme Court in *Franchise Tax Board,* 463 U.S. at 19, 103 S.Ct. at 2851, that "[f]ederal courts have ... original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." A potential suit by the government would not present such a federal question because the only question is one of ownership of the accounts, an issue governed solely by state law. Thus, jurisdiction is lacking.

■ We also note that the Declaratory Judgment Act, 28 U.S.C. § 2201, precludes a suit to declare a party's rights with respect to tax issues. Most courts, including this one, that find that jurisdiction may be proper over interpleader actions that do not state a federal question on the face of a well-pleaded complaint do so because of the close parallels between declaratory judgment suits and interpleader suits. Even if we had found the existence of a federal question in a defendant's cross-claim based on the Internal Revenue Code in this case, we would find it remarkably anomalous to permit the bank to bring this action through the interpleader procedural device where Congress has specifically barred a similar action based on the declaratory judgment procedural device.

## III. Conclusion

Therefore, because we find that the bank's complaint does not state a federal question and that neither cross-claim requires the resolution of a substantial federal question, we find that the district court lacked jurisdiction to hear this case. Accordingly, we REVERSE the decision of the district court, and we REMAND it to the district court with instructions to dismiss the action for lack of jurisdiction.